# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

**June 1, 2015**

**RORY L. PERRY II, CLERK**

**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**DEBORAH FISHER, on behalf of the dependent children of KERRI HAGER, Decedent**
**Claimant Below, Petitioner**

**vs.)  No. 13-1025** (BOR Appeal No. 2048234)
                    (Claim No. 2009093776)

**CIMARRON COACH OF VIRGINIA, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Deborah Fisher on behalf of the dependent children of Kerri Hager, the decedent, by Gregory S. Prudich, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Cimarron Coach of Virginia, Inc., by Daniel G. Murdock, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated September 13, 2013, in which the Board affirmed a March 18, 2013, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's August 14, 2009, decision rejecting the claim on the grounds that the injury did not occur in the course of and as a result of her employment when the decedent participated in criminal activity. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Hager, an employee of Cimarron Coach of Virginia, Inc., was working on May 17, 2009, when she was fatally shot by a passenger in her cab. Ms. Fisher filed a workers'

1

compensation claim for dependent's benefits on behalf of Ms. Hager's minor children alleging that her death occurred in the course of and as a result of her employment. After review, the claims administrator determined that Ms. Hager's death did not occur in the course of and as a result of her employment because Ms. Hager was involved in criminal activity outside of the scope of her employment. Ms. Fisher protested.

Statements and records obtained from the Bluefield Police Department were taken from the assailant Dennis Lamar Sampson Jr., who testified on three different occasions. According to Mr. Sampson, Ms. Hager picked him up with her boyfriend, Rufus Walker, for the purpose of procuring drugs. Mr. Sampson stated that he knew both Rufus Walker and Ms. Hager and that their relationship was one that was primarily drug-related. Mr. Sampson stated that they would buy and sell crack cocaine to each other depending on which person had any available for the day. After searching several places to find drugs, Mr. Walker stated that he knew where to find some. They went to the Mercer County Mall to meet a man named Charlie Walker to purchase drugs. All of the passengers in the car compiled their money and went up to the car to make a purchase. As this was happening, Ms. Hager walked into the mall with the keys to the cab. After Mr. Sampson and Mr. Walker placed the money in Charlie Walker's car, Charlie Walker brandished a weapon and informed them that he was not going to give them any drugs. Mr. Sampson ran back to the cab in order to pursue Charlie Walker. However, neither Ms. Hager nor the keys to the cab were there. After a few moments, Ms. Hager returned to the cab and they searched for Charlie Walker. After not being able to find Charlie Walker, Mr. Sampson asked to be dropped off at a friend's house. On the trip to his friend's house, Mr. Sampson got the notion that Ms. Hager, Rufus Walker, and Charlie Walker had just set up the drug buy as a scheme to defraud him. Mr. Sampson became enraged, pulled out his handgun and attempted to shoot Mr. Walker as he was exiting the cab. Instead, he ended up striking Ms. Hager with four rounds.

Mr. Walker was also questioned by police about the events that day. Mr. Walker stated that he was riding along with Ms. Hager when she saw a fare on the side of the road. Mr. Walker recognized the potential fare to be Mr. Sampson. Ms. Hager then stopped to inform Mr. Sampson that she could not pick him up because she had received a call from dispatch to pick up another fare. According to Walker, Mr. Sampson then brandished a weapon and demanded a ride. After the ride, he then stole her money and shot into the cab four times, killing her. When asked by an officer if Ms. Hager owed Mr. Sampson any money, Mr. Walker said that Ms. Hager had used marijuana and various pills but he could not be sure if she had ever bought narcotics from Sampson. Mr. Walker stated that he had never purchased narcotics from Sampson. Lieutenant Mayers then asked Mr. Walker if Mr. Sampson was demanding money from Hager in an effort to recoup a drug debt. Mr. Walker responded that Mr. Sampson did not say it was a drug debt but that it was Ms. Hager's fault that someone else did not pay him. Mr. Walker said that Ms. Hager had responded that she did not know what Mr. Sampson was talking about. Mr. Walker testified that Mr. Sampson called the decedent a profane name before he shot and killed her.

Ms. Fisher submitted the deposition of Jerry Nelson a manager for Cimarron Coach. According to Mr. Nelson, Ms. Hager was advised to never pick people up off the street without receiving a call from dispatch. He also stated that it was strictly against company policy to have any passengers in the cab besides the paying customer. Mr. Nelson noted that on the day of the

shooting, Ms. Hager phoned into her supervisor, Darryl Shrader, and informed him that she could not pick up any more fares for the day because she had a sick child that needed to be hospitalized. The sick child story was later confirmed to not be true by Ms. Hager's mother, Deborah Fisher. The toxicology report, completed as a part of the autopsy, indicated that Ms. Hager was using cocaine and Oxycodone on the date of her death.

The Office of Judges determined that Ms. Hager's death did not occur in the course of and as a result of her employment. In reaching its decision, the Office of Judges noted the decedent had already taken and dropped off her last fare for the day and had refused to take any more fares because of her sick child. The Office of Judges determined that Ms. Hager was lying about her need to take a sick child to the hospital because Ms. Hager's mom testified that there was no sick child and no evidence to support Ms. Hager's assertion. The Office of Judges examined the testimony of the assailant, Mr. Sampson and Mr. Walker, Ms. Hager's boyfriend. The Office of Judges determined that the evidence of record tended to support Mr. Sampson's account of the injury. The Office of Judges noted that Ms. Hager was aware that no one else was supposed to be in the cab besides paying customers. The Office of Judges determined that the presence of her boyfriend in the cab supported the inference that Ms. Hager's activities in the cab were not all within the scope of her employment. The Office of Judges also noted that the argument between Mr. Sampson and Ms. Hager in which Mr. Sampson called Ms. Hager a profane name supported the inference that Mr. Sampson felt he was cheated. The Office of Judges noted that the cocaine and Oxycodone in Ms. Hager's blood at the time of her death also supported the inference that she was involved in illicit transactions. Accordingly, the Office of Judges determined that her death could not be considered a compensable injury because the injury was not related to her employment. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

We agree with the findings of the Office of Judges and the conclusions of the Board of Review. Ms. Fisher has failed to prove that Ms. Hager's injury was received in the course and as a result of her employment with Cimarron Coach of Virginia, Inc. The deposition of Mr. Shrader, establishes that Ms. Hager dropped off her last fare and called off because she had an emergency with one of her children. The remaining evidence supports the inference that Ms. Hager was either involved in a drug transaction that went bad or involved in a scheme to defraud Mr. Sampson. Mr. Sampson's statement is more consistent with the other evidence of record than Mr. Walker's story. The autopsy revealed that Ms. Hager had recently used Oxycodone and cocaine. Mr. Walker admitted to an officer that Mr. Sampson felt he was ripped off because of Ms. Hager. This was further supported by Mr. Sampson's statements to Ms. Hager. Mr. Sampson argued with Ms. Hager and called her a profane name before he shot her. As a result, it was more likely than not that Ms. Hager was involved in other acts not related to her employment when she was tragically killed.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

3

Affirmed.

**ISSUED:   June 1, 2015**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II